IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **ERIC PATERSON,**<br><br>            **Plaintiff,**<br><br>     v.<br><br>**WELLS FARGO BANK, N.A.,** also d/b/a **WELLS FARGO HOME MORTGAGE** and **WELLS FARGO FINANCIAL,** and **DOES 1-15,**<br><br>            **Defendants.** | Case No 11 C 7954<br><br>Hon. Harry D. Leinenweber |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendant's Request for Judicial Notice and Motion to Dismiss. For the reasons stated herein, the motions are granted in part and denied in part.

### I. BACKGROUND

Plaintiff Eric Paterson sues Defendant Wells Fargo Bank, N.A. over his refinanced home loans. He alleges violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq.*, the Illinois Consumer Fraud Act ("ICFA"), 815 ILL. COMP. STAT. 505/2, and the Illinois Fairness in Lending Act ("IFLA"), 815 ILL. COMP. STAT. 120/5. Plaintiff also brings common law claims of negligent misrepresentation, fraud in the inducement, and breach of fiduciary duty.

The following is a summary of the detailed allegations in the Complaint. In March 2007, Plaintiff purchased his first home in

St. Charles, Illinois for $188,250. He financed the purchase through two mortgage loans from Bank of America, N.A.

The first Bank of America loan was for $150,600 and had a 30-year term and a fixed rate of interest of 6.375%. The second loan was for $28,200 for 15 years at a fixed interest rate of 8.375%. Plaintiff's combined monthly payment on these loans (including principal, interest, and escrowed tax payments) was $1,430.42. The total combined cost to Plaintiff over the life of the loans would have been $222,397.43. At the time Plaintiff refinanced, he held $11,676 in equity.

On or about January 9, 2009, Defendant's employee Jon Mize ("Mize"), "cold called" Plaintiff with an offer to refinance Plaintiff's mortgage loans and use Plaintiff's home equity to pay off his existing car loan. Mize made disparaging comments about Plaintiff's Bank of America loans and told Plaintiff that he could get better loan terms by refinancing with Wells and making one monthly mortgage payment instead of two.

Plaintiff declined Mize's initial offer to refinance. Mize continued to pursue Plaintiff, however, and eventually Plaintiff agreed to refinance, but without rolling in his car loan. Plaintiff told Mize that he was unfamiliar with lending procedures, but that he trusted Mize and that he would rely on Mize's judgment to acquire the best loan terms for Plaintiff.

Plaintiff has a high school education, and had never refinanced a mortgage before. Mize represented himself and Defendant as trustworthy and experienced, repeatedly telling Plaintiff that he would get the best loan terms available. Mize and Defendant controlled all aspects of the refinancing process, including choosing the loans for which Plaintiff applied and completing the applications.

Three to five times in the application process, Mize suggested loan terms to Plaintiff, only to tell him later that he no longer qualified for them (despite Plaintiff's actually strong credit scores). Plaintiff repeatedly asked, and was assured, that his new monthly payments would include property tax payments. Mize told Plaintiff that he would not finalize the transaction unless he made the loan "good" for Plaintiff.

On February 11, 2009, Plaintiff closed on his new loan in 20 minutes, with Mize as the closing agent and notary. At closing, Mize instructed Plaintiff to take steps to improve his credit score, telling him that he could then refinance again in six months on even better terms. The refinanced loan had a 40-year term and an adjustable rate that started at 8.5% (with a maximum rate of 14.5%). The principal amount of the loan was $186,691.69, which given the appraised value of Plaintiff's home ($187,000), left him $308.31 in equity. The total cost of the refinanced loan will be $477,426.34. The loan included a $7,180.43 "discount point" fee,

and a $2,814.26 payment to Plaintiff.  It also included a $473 payment to one of Plaintiff's "creditors" – to whom Plaintiff actually owed no money.  Plaintiff accepted these arrangements on Mize's advice.

Plaintiff's payments did not include the promised escrowed taxes; an escrow account was established later, further increasing the monthly payment.  The loan has a three percent prepayment penalty charge for the first 34 months.

After the closing, Plaintiff took steps to further improve his credit.  In May 2009, however, after discussing his loan terms with a friend, Plaintiff learned that refinancing within six months would be impossible, as the prepayment penalty, which would have been rolled into the new loan balance, would have made the new loan principal exceed the value of his home.  As a result of the loan, Plaintiff's monthly payments and cost of credit have increased, and he struggles to make ends meet.

## II. **LEGAL STANDARD**

At this stage, the Court accepts as true all well-pleaded facts in the Complaint and draws all inferences in Plaintiff's favor.  *See Cole v. Milwaukee Area Tech. Coll. Dist.*, 634 F.3d 901, 903 (7th Cir. 2011).  A complaint must contain a "short and plain statement of the claim" containing sufficient factual matter to allow the Court to reasonably infer that Defendant is liable for the alleged misconduct.  FED. R. CIV. P. 8(a)(2); *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009). Fraud claims must be pled with particularity. FED. R. CIV. P. 9(b).

### III. ANALYSIS

#### A. Defendant's Request for Judicial Notice

Defendant asks the Court not to notice particular facts, but to consider certain loan-related documents without converting its motion to one for summary judgment. *See* FED. R. CIV. P. 12(d). Courts may consider new documents provided with a motion to dismiss, if they "are referred to in plaintiff's complaint and are central to [his] claim." *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993).

There is no objection to the Court considering Defendant's Exhibits C-F, which are executed copies of loan documents referenced on the Complaint. The Court will consider them. Regarding Defendant's Exhibits A and B, these documents are not mentioned in the Complaint, and were executed on dates similarly unmentioned in the pleadings. The Court will not consider them.

Defendant's Exhibit G is a copy of the Notice of Right to Cancel executed by Plaintiff on February 11, 2009. Plaintiff attached an unexecuted copy of the same document to his Complaint; therefore, Defendant claims, the executed copy is appropriate for consideration. As discussed below, however, the timeliness of Plaintiff's TILA claim depends on whether he was given two copies of this disclosure (he claims that he was not). *See* 12 C.F.R.

§ 226.23(b)(1). Thus, the second copy is integral to Defendant's defense, but not the Complaint. *Cf. Mayoral v. WMC Mortg., LLC*, No. 08 C 7292, 2009 WL 3272697, at *3 (N.D. Ill. Oct. 6, 2009) (refusing to consider such a Notice under similar circumstances). Defendant's request is denied as to its Exhibit G. The Court similarly declines to consider Plaintiff's declaration in resolving the motion to dismiss.

### B. TILA Rescission

Plaintiff claims that Defendant failed to provide him with two copies of the required notice of right to rescind. *See* 12 C.F.R. § 226.23(b)(1). If true, this failure extended Plaintiff's right to rescind from three days to three years. 12 C.F.R. § 226.23(a)(3).

Defendant moves to dismiss Count I, arguing that the executed copy of the Notice attached to its request for judicial notice, along with the unexecuted copy Plaintiff attached to his Complaint, proves that two copies were delivered. However, the Defendant's copy is not part of the pleadings. Even if it were, the *existence* of a second copy does not mean that two were given to Plaintiff in the manner required by the regulations. *See Robbins v. Nationwide Advantage Mortg. Co.*, No. 10-CV-822-JPS, 2011 WL 6888573, at *1 n.2 (E.D. Wis. Dec. 30, 2011) (noting that the existence of two copies does not prove that the consumer received two copies he could keep, as required). Therefore, Plaintiff's allegation that he received

only one copy of the required disclosure is sufficient; Defendant's Motion to Dismiss is denied as to Count I.

### C. Breach of Fiduciary Duty

The Court turns next to the fiduciary claim, as several of Plaintiff's other claims depend upon its sufficiency. Under Illinois law, relationships like mortgagor-mortgagee are not automatically fiduciary in nature, but may become so in particular circumstances. *Pommier v. Peoples Bank Marycrest*, 967 F.2d 1115, 1119 (7th Cir. 1992). To support this claim, Plaintiff had to plead facts indicating that he placed his trust in Defendant, who accepted that trust and as a result gained dominion and influence over Plaintiff. *Id.* In assessing whether a fiduciary relationship exists, courts consider factors such as "kinship, age disparity, health, mental condition, education, business experience, and the extent of reliance." *Id.* (Eventually, Plaintiff will have to prove this relationship by clear and convincing evidence, not a mere preponderance.)

At this stage, Plaintiff has adequately pled a breach of a fiduciary duty. He particularly alleged, *e.g.,* his own limited education and experience as compared to Mize and Defendant; that he explicitly, avowedly placed his trust in them, which was accepted; and that they controlled the application decisions, process, and closing, all while assuring him that they were acting in his best interest. Instead of doing so, he alleges, they lied about his

loan terms and creditworthiness, overcharged him, and failed to give him important information. That is sufficient, at this stage, to proceed on a breach of fiduciary duty claim. *See Suarez v. JP Morgan Chase Bank, NA*, No. 10-cv-3382, 2011 WL 2149427, at *7-8 (N.D. Ill. June 1, 2011).

The fact that Plaintiff initially rejected the offer to "roll" his car loan into a refinanced loan does not defeat his claim; the alleged fiduciary relationship of trust and dominance developed after that initial contact. Nor does Defendant offer any support for its claim (raised first in its reply) that no fiduciary relationship could arise before the parties' relationship was formalized by contract. Count IV stands.

**D. Fraud in the Inducement and Negligent Misrepresentation**

Plaintiff's alternative claims for common law fraud and negligent misrepresentation are premised on the same alleged misstatements, and attacked on the same grounds. The Court therefore addresses them together. To state an Illinois common law fraud claim, Plaintiff must allege that: (1) Defendant made a false statement of material fact; (2) knowing its falsity; (3) intending Plaintiff to act on it; (4) Plaintiff justifiably relied upon it; and (5) Plaintiff was damaged by that reliance. *See Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 591 (Ill. 1996). "Negligent misrepresentation has essentially the same elements," except that the defendant need not know that the statement was

false; it need only have been careless or negligent in ascertaining the statement's truth if it owed Plaintiff a duty of accurate information. *Kopley Group V., L.P. v. Sheridan Edgewater Properties, Ltd.*, 876 N.E.2d 218, 228 (Ill. App. Ct. 2007). Reasonable reliance is usually a question of fact, but can be determined as a matter of law if no trier of fact could find it reasonable. *Cozzi Iron & Metal, Inc. v. U.S. Office Equipment, Inc.*, 250 F.3d 570, 574 (7th Cir. 2001).

Plaintiff claims that Defendant knowingly made numerous misstatements, including: that the new loan had better terms than his old ones that Plaintiff would be able to refinance again shortly after closing, and that the loan would include a tax escrow. He alleges that the misstatements were intended to, and did, induce Plaintiff to refinance with Defendant. As a result, he alleges, his equity was stripped and he had higher monthly loan payments over a longer loan term.

In its reply, Defendant argues that many of the claimed lies were true, or else mere puffery. Plaintiff had no chance to respond to these claims, however; they are waived.

Defendant properly presents two related arguments. Because the misstatements conflict with the terms of the contract, it claims, the counts either fail as a matter of law or reliance on the statements was *per se* unreasonable. Generally, a party has no fraudulent inducement claim if it had a chance to read the contract

terms which contradict the false statements. *Regensberger v. China Adoption Consultants, Ltd.*, 138 F.3d 1201, 1207 (7th Cir. 1998). This "duty to learn" may generally bar a fraud claim, *see Belleville Nat. Bank v. Rose*, 456 N.E.2d 281, 284 (Ill.App.Ct. 1983), or defeat a claim of reasonable reliance. *See Regensberger*, 138 F.3d at 1207.

There are, however, exceptions to that rule. Plaintiff suggests several; the Court need address only one. Illinois courts may excuse ignorance of contract terms where, as alleged here, a fiduciary rushed the plaintiff in signing the documents, giving him little chance to scrutinize them. *See Tuchowski v. Rochford*, 368 Ill.App.3d 441, 444-45 (2006) (citing *Melvin State Bank v. Crowe*, 239 N.E.2d 483 (Ill. App. Ct. 1968)). The Court cannot agree with Defendant that the Seventh Circuit eviscerated that exception in *Carr v. CIGNA Securities, Inc.*, 95 F.3d 544, 548 (7th Cir. 1996). That case focused on Oregon law, involved clearer disclosures than those alleged here, and noted that some fiduciary relationships may still dispel the duty to learn. *Id.* at 547-48. Accordingly, at this stage, the duty to learn the contents of the mortgage contract does not bar Plaintiff's common law claims (Counts III and VI).

### E. Deception under ICFA

Plaintiff also brings a deception claim under the ICFA, which requires: (1) a deceptive act or practice by defendant; (2) its intent that Plaintiff rely on the deception; and (3) that the

deception took place during a course of conduct involving trade or commerce. *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (Ill. 2002). The deception also must have proximately caused the injury. *Cozzi,* 250 F.3d 570 at 576.

The Court has already addressed, above, why Defendant's duty-to-learn argument fails at this stage. (Defendant does not seem to argue that fiduciary relationship exception cannot apply under the ICFA.) The Court notes that Defendant's cited cases either did not involve a fiduciary claim, *Bank of Am., N.A. v. Shelbourne Dev. Group, Inc.*, 732 F.Supp.2d 809 (N.D. Ill. 2010), or involved a failed one, see *RBS Citizens, N.A. v. Sanyou Import, Inc.*, No. 11 C 1820, 2011 WL 2712744, at *3 (N.D. Ill. July 13, 2011).

Furthermore, Plaintiff appears to be correct that reasonable reliance on the misstatements is not an element of an ICFA deception claim, despite a few District Court and Illinois Appellate Court cases to the contrary. As the Seventh Circuit recognized in *Cozzi,* federal courts should follow the Illinois Supreme Court, which has stated that reliance is not a requirement under the ICFA. *Cozzi*, 250 F.3d at 576 (7th Cir. 2001) (citing *Connick,* 675 N.E.2d at 593.). *Robinson v. Toyota Motor Credit Corp.*, the more recent Illinois Supreme Court case on which Defendant relies, did not change this rule as relevant here – it involved allegedly deceptive contract terms, not pre-contractual misrepresentations. *Robinson*, 775 N.E.2d at 962, 964 (noting that

there were insufficient facts alleged to support a deception claim, and the contract terms were clear.) Accordingly, Count II's deception claim survives.

### F. Unfairness under ICFA

The ICFA also prohibits unfair acts or practices. *Id.* at 960. Conduct is "unfair" if it: (1) violates public policy; (2) is immoral, unethical, oppressive, or unscrupulous; and (3) substantially injures consumers. *Id.* All three criteria need not be satisfied; "[a] practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Id.* at 961 (citation and internal quotations omitted). The ICFA should be liberally construed to protect consumers. *Id.* at 960.

Plaintiff alleges that Defendant's conduct violated the public policy of the Illinois Fairness in Lending Act ("IFLA"), 815 Ill. Comp. Stat. 120/3. In its reply, Defendant essentially concedes that this element is adequately pled. The Court agrees.

The second prong is met where the conduct is "so oppressive that the consumer has little choice but to submit." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 935 (7th Cir. 2010). The third is met if the injury "(1) [is] substantial; (2) [is not] outweighed by any countervailing benefits to consumers or competition that the practice produces; and (3) [is one] that consumers themselves could not reasonably have avoided." *Id.*

Defendant argues that Plaintiff had other loan options, and was not coerced or threatened; therefore, it claims, he had other meaningful options, and the conduct was not oppressive. Second, it argues, he cannot establish injury, in that he could have avoided the claimed harm by reading, and refusing to sign, the loan documents. Plaintiff contends that Defendant created an environment of trust, claiming to work in Plaintiff's best interests while exploiting his trust and relative ignorance. Therefore, he claims, the conduct was oppressive and he could not have reasonably avoided his injury.

Plaintiff's argument on the second two prongs is not strong. Nonetheless, in light of the fact that: (a) the Court is permitting the fiduciary claim to proceed; (b) the first prong was adequately pled, and (c) the ICFA is to be liberally construed to protect consumers, the Court will not dismiss the Count II unfairness claim at this juncture.

### G. IFLA Claim

Finally, Plaintiff brings a claim under the Illinois Fairness in Lending Act ("IFLA"), 815 ILL. COMP. STAT. 120/5. Defendant moves to dismiss this count, noting that: "[i]f the same events or circumstances would constitute the basis for an action under [the IFLA] or an action under *any other Act*, the aggrieved person . . . may not bring actions . . . under more than one of the two Acts. . . ." *Id.* at (b). (emphasis added).

Plaintiff argues that the IFLA's legislative history indicates that this bar was aimed only at eliminating duplication between the IFLA and the Illinois Human Rights Act. However, the Court knows of no cases, nor does Plaintiff cite any, that have followed such an interpretation. Indeed, the cases appear to reject Plaintiff's very argument. *See, e.g., Smith v. United Residential Servs. & Real Estate, Inc.*, 837 F.Supp.2d 818, 824 n. 9 (N.D. Ill. July 25, 2011). The Court agrees that the statutory language is clear. Plaintiff asks the Court, if it must dismiss one count to avoid duplication, to dismiss Count V. Accordingly, Count V is dismissed.

## IV. CONCLUSION

For the reasons stated herein, Defendant's request for "judicial notice" is granted as to Exhibits C, D, E, and F and denied as to Exhibits A, B, and G. Additionally, Defendant's motion to dismiss is granted as to Count V, and denied as to the remaining claims.

**IT IS SO ORDERED.**

                                                Harry D. Leinenweber, Judge
                                                United States District Court

**DATE:** 9/27/2012